**Opinion issued October 31, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00102-CV

———————————

## SVETLANA B. POPLIN, Appellant

## V.

## AMERISURE INSURANCE COMPANY, Appellee

**On Appeal from the County Civil Court at Law No 2**
**Harris County, Texas**
**Trial Court Case No. 907501**

## MEMORANDUM OPINION

This is a worker's compensation case. Appellant Svetlana Poplin appeals from the trial court's order granting summary judgment in Appellee Amerisure Insurance Company's favor. We affirm.

# BACKGROUND

Poplin's husband, James Poplin, worked as an air conditioning technician for Air Performance Service, Inc. Poplin's petition alleges that, on June 25, 2006, James worked on an air-conditioning tower located atop of a six-story building. After a few hours, he became ill. Paramedics called to the scene diagnosed James with heat exhaustion and transported him to the hospital while infusing saline to replace lost fluids. Within twenty minutes of reaching the hospital, James's condition was downgraded to cardiac arrest and he passed away shortly thereafter.

## A. Administrative Proceedings

Poplin applied for workers' compensation benefits from Amerisure, Air Performance's provider. Amerisure denied her claim. After an unsuccessful mediation, a Benefit Contested Case Hearing was held to "resolve the following disputed issue: Whether James Poplin sustained a compensable fatal heart attack on June 25, 2006." Both parties were represented by counsel and presented evidence. The hearing officer's report noted that Poplin "presented several medical articles to support the proposition that physical stress could constitute a cause of a heart attack," but "she offered no medical evidence specific to this case to indicate to what extent Mr. Poplin's work activities of June 25, 2006 caused or contributed to his heart attack." Amerisure "offered the opinions of Drs. Chu and Podet, who indicated that [James'] work, rather than the natural [progression] of

his preexisting heart disease, was not a substantial contributing factor in his heart attack." The report contained several express findings, including:

-"James Poplin's heart attack on June 25, 2006 occurred at a definite time and place."

-"James Poplin's heart attack of June 25, 2006 was not triggered solely by emotional stress."

-"James Poplin's heart attack of June 25, 2006 was not caused by a specific event occurring within the course and scope of his employment."

-"James Poplin's work, rather than the natural progression of his preexisting heart condition or disease, was not a substantial contributing factor of his heart attack of June 25, 2006."

The report concluded that James "did not sustain a compensable fatal heart attack." Poplin's claim was accordingly denied. This decision was affirmed by the Division of Workers' Compensation Appeals Panel.

## B. Trial Court Proceedings

In February 2008, Poplin filed suit in county court, seeking review of the denial of benefits.[1] As the party appealing the final administrative decision on the compensability of an injury, she bore "the burden of proof by a preponderance of the evidence." TEX. LABOR CODE ANN § 410.303 (Vernon 2006); *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516 (Tex. 2007). In July 2012, following

---

[1] "A party that has exhausted its administrative remedies . . . and that is aggrieved by a final decision . . . may seek judicial review." TEX. LAB. CODE § 410.251 (Vernon 2006).

expiration of the discovery period, Amerisure moved for traditional and no-evidence summary judgment. The trial court granted summary judgment in Amerisure's favor without specifying the grounds. It is from that order that Poplin now appeals.

## STANDARD OF REVIEW

An appellate court reviews de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the grounds for its grant of summary judgment, the reviewing court must affirm the summary judgment if any of the theories presented to the court and preserved for appeal are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). When there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was granted, the appellant must negate all grounds on appeal. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing a traditional

4

summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Texas Commerce Bank v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002). A defendant who moves for traditional summary judgment on the plaintiff's claims must conclusively disprove at least one element of each of the plaintiff's causes of action. *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004).

A no-evidence motion for summary judgment is essentially a directed verdict granted before trial, to which we apply a legal sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. TEX. R. CIV. P. 166a(i). A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the

evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. We view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id.*

When a summary judgment motion is filed as a hybrid motion based upon both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 526 (Tex. App.—Fort Worth 2009, pet. denied). If the movant has filed a proper no-evidence motion for summary judgment and the non-movant has failed to produce more than a scintilla of evidence under the standards of Rule 166a(i), there is no need to analyze whether the movant's summary judgment proof satisfied the burden set forth for traditional summary judgment under Rule 166a(c). TEX. R. CIV. P. 166a(c), (i); *E. Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 816 (Tex. App.—Fort Worth 2007, pet. denied).

## COMPENSABLE INJURY

The Texas Labor Code specifies when a heart attack is considered a compensable workers' compensation injury:

A heart attack is a compensable injury under this subtitle only if:

> (1)    the attack can be identified as:
>
>     (A)    occurring at a definite time and place; and

> (B)    caused by a specific event occurring in the course and scope of the employee's employment;
>
> (2)    the preponderance of the medical evidence regarding the attack indicates that the employee's work rather than the natural progression of a preexisting heart condition or disease was a substantial contributing factor of the attack; and
>
> (3)    the attack was not triggered solely by emotional or mental stress factors, unless it was precipitated by a sudden stimulus.

TEX. LAB. CODE ANN. § 408.008 (Vernon 2006).

## A.    Parties' arguments

Amerisure's motion argued that there was no evidence of the following: (1) "the heart attack occurred at a definite time and place," (2) "the heart attack was caused by a specific event occurring in the course and scope of the employee's employment," and (3) "the employee's work rather than the natural progression of a preexisting heart condition or disease was a substantial contributing factor of the attack." The principle focus of the parties' arguments in the trial court and here has been this last factor, i.e., whether work was a "substantial contributing factor" of James's heart attack.

With regard to this element, Poplin's summary-judgment response asserts that the "preponderance of the medical evidence regarding the attack indicates that the employee's work rather than the natural progression of a preexisting heart condition or disease was a substantial contributing factor of the attack." Her response further argued that no expert testimony was required on this element,

7

because the supreme court has held that no expert testimony is necessary to "decide the probabilities when the trier of the fact is given evidence of prompt onset of the [heart] attack following an occurrence competent to affect adversely a defective heart." *Ins. Co. of N. Am. v. Kneten*, 440 S.W.2d 52, 54 (Tex. 1969).  She also cites this Court's opinion in *Tex. Employers Indemnity Co v. Etie*, 754 S.W.2d 806, 808 (Tex. App.—Houston [1st Dist.] 1988, no writ) for the proposition that, "[i]n a workers' compensation case, expert testimony is generally not required to prove an issue of probability, if the trier of fact has been given sufficient evidence showing the prompt onset of symptoms following a specific event."  Poplin acknowledges that the autopsy reflects that James had a preexisting heart condition, but she emphasizes that, after "first showing signs of heat exhaustion, prompt onset of the heart attack occurred and [he] was dead within the hour."

## B.    Summary-judgment evidence

Poplin's summary-judgment response does not provide citations to any evidence, but attaches the following: (1) paramedic records from Houston Fire Department, (2) medical records from Christus St. John's Hospital, (3) deposition excerpts of Albert Y. Chu, M.D. (assistant medical examiner), and (4) a letter from Ethan Podet, M.D. (cardiologist).[2]

---

[22]    In her summary-judgment response, Poplin objected to Amerisure's reliance upon Chu's testimony as an expert in the absence of a *Robinson* hearing.  She also filed additional medical articles as summary-judgment evidence with her "Final

8

Chu's deposition excerpts contain the following statements about causation:

A.   Immediate cause of death is ineffectual pumping of the heart due to cardiac arrhythmia due to lechemia in his heart from blockages in his heart, coronary arteries, including the thrombus in his left anterior descending artery; but possibility also the blockages in his left circumflex artery, his right coronary artery, and the fact that he had an old myocardial interception and an enlarged heart from his long-standing hypertension.

Q.   So you have no – in your last statement you gave, you had no opinion on what causes plaque to rupture?

A.   In his specific case, no I don't know what the inciting event or combination of events was.

Q.   Well, what are some risk factors in plaque rupture, if you know?  If you've got atherosclerosis, what are some risk factors that you want to – for example, you want to avoid so that you don't have rupture of the plaque?

A.   As I mentioned earlier, it's a multi – it's thought to be a multifactorial process.  So there are certain intrinsic factors, such as the anatomy of the plaque itself, the anatomy of the heart, of the blood vessel itself, the person's underlying medical condition.  So certain health states lead one to be more likely to have plaque rupture.

There are extrinsic factors, such as changes to blood pressure or blood flow; of course, whether or not the person is on drugs, such as cocaine; environmental factors, like heat; physical exertion.  So there [are] many different potential triggers for plaque rupture.  It could be a combination of those different things.

Q.   Tell us about heat, how heat could apply in this situation in causing plaque rupture.

---

Replication to Plaintiff's Response on its Motion for Summary Judgment" to respond to some of the evidence Amerisure filed in support of its traditional motion for summary judgment.  We need not address Poplin's objections to Amerisure's evidence or the evidence Poplin filed in response to Amerisure's evidence, as both relate to Amerisure's traditional motion for summary judgment, and we resolve this appeal on no-evidence grounds.

A.      Presumably, if someone's hot and dehydrated, increasing the blood via – increasing the blood viscosity, that might cause more turbulence in the coronary arteries and lead to plaque rupture.

*Q.      In other words, the thickness of the blood would create additional stress on the walls of your arteries and possibility cause plaque to rupture, couldn't it?*

*A.      Possibly.*

*Q.      Did you consider that in Mr. Poplin's case?*

*A.      I considered whether or not his death might have been heat related.*

Q.      Did you see from the Houston Fire Department records that he was administered saline IV's on the way to the hospital because of fluid loss?

A.      Yes.

*Q.      Okay, Did you consider that?  Did you think that that could have been – or did you consider that as a possible cause of the plaque rupture in this case?*

*A.      No.*

*Q.      But it could have been a cause?*

*A.      It could – it's – I would say it could have been a risk factor for plaque rupture.  However, as I mentioned earlier, I think he already had – his plaque had already ruptured by the time he went to work that day.*

Q.      Well, how did he – what makes you say that?

A.      When I looked at the plaque microscopically, I saw evidence of inflammatory reaction to that thrombus.

Q.      Where is that written here in your records?

A.       It's not in – it's not in my report.  I reviewed the slides this morning in preparing for this deposition.

(emphasis added)

10

Podet's letter stated that he had "reviewed the statements of Dr. Chu and Dana Andrews, the ER and EMT notes of 6-25-06, the autopsy of 6-27-06, and the medical records" and concluded the following with regard to causation:

> I agree with Dr. Albert Y. Chu, the assistant medical examiner, that the underlying cause of death was atherosclerotic cardiovascular disease and that the immediate cause was probably the LAD thrombus. The question has been raised as to whether Mr. Poplin's strenuous work caused the heart attack, and cardiac arrest. Studies of physical exertion as a trigger of sudden death reveal that vigorous exertion multiplies the risk of sudden death 17-fold, compared to rest, but that the risk of sudden death for a specific episode of exertion is very low, at one excess death per 1.4 million episodes of exertion. (Albert CM. *et al*. Triggering of Sudden Death from Cardiac Causes By Vigorous Exertion. *New Engl J Med* 2000; 343:1355-61.)
>
> Given these statistical considerations, the nature of his death, and the chronic and acute cardiac disease found at autopsy, ***the cause of Mr. Poplin's death was the natural progression of his underlying cardiac disease, rather than a specific episode of exertion during the course of his work***.

(emphasis added).

## C.     Analysis

The question we must resolve is whether the evidence Poplin proffered is some "medical evidence . . . indicat[ing] that the employee's work rather than the natural progression of a preexisting heart condition or disease was a substantial contributing factor of the attack." TEX. LAB. CODE ANN. § 408.008(2). Poplin relies on the supreme court's opinion in *Kneten*, a case holding that medical expert testimony was not necessary to establish an electric shock at work was a cause of a heart attack.

11

In the present case the fact finder had direct evidence of the occurrence on the job when the employee, while wet with sweat in the heat and effort of his work, was shocked throughout his body with an electrical current. The fact finder was told of the prompt onset of symptoms with the employee feeling bad within a few minutes and his distress progressing until he was in a critical state in the hospital within a few hours. The doctor testified that this distress was due to a heart attack and that the heart is still impaired. Further, the doctor testified that what happened on the job could precipitate a heart attack. With those facts given, it was not conjecture on the part of the jury to conclude that the occurrence on the job was probably a cause of the attack and resulting disability.

Since the question is what precipitated this attack at this time, it requires no expert to decide the probabilities when the trier of fact is given evidence of prompt onset of the attack following an occurrence competent to affect adversely a defective heart. As in all of those cases where a back injury promptly follows a lifting strain, or a ruptured blood vessel or heart attack promptly follows exertion, though there is not definite proof of the mechanical process by which the physical structure of the body is damaged, under the circumstances it is reasonable to believe that what the employee did on the job precipitated physical failure. The courts have often allowed this finding and permitted recovery under the Texas Workmen's Compensation Law.

440 S.W.2d at 53–54 (citations omitted).

According to Poplin, Chu's statement that dehydration "might cause more turbulence in the coronary arteries and lead to plaque rupture" combined with *Kneten*'s recognition that a fact finder can—without an expert—conclude that an occurrence preceding a heart attack "was probably a cause of the attack," *id.*, satisfies section 408.008(2)'s requirement that "the preponderance of the medical evidence regarding the attack indicates that the employee's work rather than the

12

natural progression of a preexisting heart condition or disease was a substantial contributing factor of the attack." We disagree.

Preliminarily, we note that *Kneten*—decided in 1969—predates the current, applicable statutory standard for determining when a heart attack is a compensable injury under the worker's compensation laws. As the San Antonio Court of Appeals has explained, "[p]rior to 1989, there was no specific statute dealing with the compensability of heart attacks." *Transcon. Ins. Co. v. Smith*, 135 S.W.3d 831, 836 (Tex. App.—San Antonio 2004, no pet.). "The case law that developed before 1989 focused on the issue of whether an employee's strenuous work activities caused the heart attack even though the employee had a pre-existing heart condition." *Id.* "[C]ourts only required that the job-related strain be at least a contributing cause of the heart attack." *Id.* "Therefore, if the work incited, accelerated, or aggravated the claimant's underlying heart condition, it was a sufficient cause of the resulting heart attack for the purposes of recovering workers' compensation benefits." *Id.* In contrast, the current statute requires "the employee's work rather than the natural progression of a preexisting heart condition or disease [be] a *substantial contributing factor* of the attack." TEX. LABOR CODE ANN. § 408.008(2) (emphasis added).

"Additionally, before 1989, medical testimony was not required on whether an occurrence caused a heart attack." *Transcontinental Ins. Co.*, 135 S.W.2d at

13

836. Now the Labor Code requires us look to the "the preponderance of *the medical evidence* regarding the attack" in determining whether the employee's work was a substantial contributing factor. TEX. LABOR CODE ANN. § 408.008(2) (emphasis added).

For these same reasons, the Fourteenth Court of Appeals has questioned *Kneten*'s continued viability in the worker's compensation context. *See Choice v. Gibbs*, 222 S.W.3d 832, 837 n.5 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("In workers' compensation cases, a question might arise regarding the extent to which the *Kneten* opinion has survived the enactment of this statute.").

By the plain language of the statute, to survive Amerisure's no-evidence motion for summary judgment, Poplin was required to proffer in response "medical evidence regarding the attack indicat[ing] that the employee's work rather than the natural progression of a pre-existing heart condition or disease was a substantial contributing factor." TEX. LAB. CODE § 408.008(2). We have found this standard satisfied by expert physician testimony that (1) "higher-than-normal activity can increase the risk for a heart attack," (2) the day before an employee's heart attack, he engaged in physical activity that was "significantly higher" than usual, (4) "from a cardiac perspective, [the employee] had been stable up until" the strenuous work activity, (4) the employee suffered plaque rupture, causing his heart attack and death, and (5) "it was [the employee's] activity [at work] that

14

caused the rupture." *New Hampshire Ins. Co. v. Allison*, No. 01-12-00505-CV, __ S.W.3d __, 2013 WL 3947822, at *4, 9 (Tex. App.—Houston [1st Dist.] Aug. 1, 2013, no pet. h.).

Poplin's evidence falls short of what we have previously held sufficient under section 408.008(2). Her summary-judgment evidence here consists of: (1) medical records reflecting that James suffered dehydration at work, (2) medical records reflecting that shortly after suffering dehydration, James had a heart attack, (3) Chu's deposition testimony that heat and dehydration can "possibly" cause plaque to rupture, (4) Chu's deposition testimony that he did not consider heat or fluid loss to be a possible cause of James's plaque rupture because "his plaque had already ruptured by the time he went to work that day," and (5) Podet's opinion that "the cause of [James's] death was the natural progression of his underlying cardiac disease, rather than a specific episode of exertion during the course of his work." Because Poplin did not proffer evidence that James's "work rather than the natural progression of a pre-existing heart condition or disease was a substantial contributing factor" his heart attack, the trial court did not err in granting Amerisure's no-evidence motion for summary judgment.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.